IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AGGREKO, LLC, a foreign limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. CIV-07-851-C |
| PACIFIC MOTOR TRANSPORT COMPANY D/B/A PACER, a foreign corporation, | ) ) ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Aggreko, LLC, filed this action alleging that Defendant, a motor carrier who transported Plaintiff's product, is liable for damage to that product under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. (See Compl., Dkt. No. 1.) Now before the Court are both parties' motions for summary judgment (see Pl.'s Mot., Dkt. No. 24; Def.'s Mot., Dkt. No. 27), both parties' responses (see Def.'s Resp., Dkt. No. 29; Pl.'s Resp., Dkt. No. 30), and Plaintiff's reply (see Pl.'s Reply, Dkt. No. 32). For the reasons stated below, both motions are denied.

I. STANDARD

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the evidence allows a reasonable jury

to resolve the issue either way and is 'material' when 'it is essential to the proper disposition of the claim.'" Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006) (citation omitted), cert. denied, 127 S. Ct. 1372 (2007).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

With respect to cross-motions for summary judgment, the Court must evaluate each motion on its own merits, construing all inferences in favor of the party against whom the motion under consideration is made. See Pirkheim v. First Unum Life Ins., 229 F.3d 1008, 1010 (10th Cir. 2000). Although summary judgment is inappropriate if disputes remain as to material facts, the Court is permitted "to assume that no evidence needs to be considered

other than that filed by the parties." Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation and internal quotation marks omitted). The Court analyzes each motion for summary judgment separately; "the denial of one does not require the grant of another." Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (citation and internal quotation marks omitted).

## II. BACKGROUND

Plaintiff (the "shipper"), a lessor of industrial equipment, hired Dedicated Transportation Systems ("DTS") to act as its broker in arranging for the transport of Plaintiff's product. (See Compl. ¶ 7.) On October 6, 2004, DTS, in its capacity as Plaintiff's broker, entered into a Broker-Carrier Agreement with Defendant (the "carrier"). (See Broker-Carrier Agreement, Compl. Ex. 1.) Pursuant to this agreement, Defendant, a motor carrier in interstate commerce, agreed to provide transportation of shipments for Plaintiff. (See id.)

Specifically, Plaintiff wished for Defendant to transport a cooling tower ("IT 13-04" or "the shipment") from Plaintiff's lessee's facility in Roxana, Illinois, to Plaintiff's own facility in Chickasha, Oklahoma. (See Pl.'s Mot. at 1.) According to Defendant, this tower was one of approximately forty-four such towers that were being shipped back to Plaintiff from Roxana. (See Def.'s Resp. at 1.) Thus, at the Roxana facility on or about August 7, 2006, the IT 13-04 cooling tower was moved via crane and set on the flatbed trailer attached to one of Defendant's trucks. The crane was operated by an unknown individual, apparently

not employed by either Plaintiff or Defendant. (See Pl.'s Mot. at 1; Def.'s Resp. at 2.) It is not disputed that Defendant's truck – one in a line of trucks from various companies awaiting cooling towers to be loaded for transport – then was driven to a separate area called a lay-down yard so that the cooling tower could be secured to the bed of the trailer. After the cooling tower was secured, Defendant's truck departed directly from the lay-down yard. (See Def.'s Resp. at 2; Richardson Dep., Dkt. No. 32 Ex. 2, at 24-25, 39.) Sometime prior to the truck's departure, Defendant's truck driver signed the bill of lading without noting any damage to the shipment.[1] (See Bill of Lading.) When the shipment arrived in Chickasha, OK, it was in damaged condition; an employee for Plaintiff signed the bill of lading at that time and noted that the tower was "damaged by chain . . . before [it] arrived at yard." (See id.)[2] A cooling tower is a large box-shaped object; on each top corner there is a metal ring called a "lifting eye." Specifically, one of the corners of Plaintiff's IT 13-04 tower was damaged when a small piece of material on one of the corners split from the chain resting on it. (See Tower Tech Report, Dkt. No. 24 Ex. 3; Def.'s Resp. at 2-3.) Plaintiff timely filed a claim with Defendant for the damaged shipment, and when this

---

[1] A bill of lading is "[a] document acknowledging the receipt of goods by a carrier or by the shipper's agent and the contract for the transportation of those goods; a document that indicates the receipt of goods for shipment and that is issued by a person engaged in the business of transporting or forwarding goods." Black's Law Dictionary (8th ed. 2004). A "clean" bill of lading is one which does not contain a clause or notation qualifying its terms, e.g., a bill of lading without a recording of cargo damage. Id.

[2] The parties assert that they have been unable to depose both Defendant's truck driver and Plaintiff's employee who noted the damage to the shipment on the bill of lading in Chickasha, OK. (See Duplantis Aff.; Def.'s Resp. at 2.)

4

demand was not satisfied, Plaintiff filed the present action asserting that Defendant was liable under the Carmack Amendment.

### III. DISCUSSION

*A. Plaintiff's Motion*

To establish a claim under the Carmack Amendment, Plaintiff must show: "(1) delivery of the property to the carrier in good condition; (2) arrival of the property at the destination in damaged or diminished condition; and (3) the amount of its damages." Mercer Transp. Co. v. Greentree Transp. Co., 341 F.3d 1192, 1196 (10th Cir. 2003). If Plaintiff establishes this prima facie case ("PFC"), "[t]he burden then shifts to the carrier to demonstrate both that it was not negligent and that the damage was caused by an event excepted at common law." Id. The excepted causes that relieve the carrier of liability are: (1) acts of God; (2) acts of the public enemy; (3) acts of the shipper itself; (4) public authority; or (5) the inherent vice or nature of the goods. Id. at 1196 n.5.

Assuming for summary judgment purposes, as did Defendant, that Plaintiff established its prima facie case,[3] a genuine issue of material fact exists over whether one of

---

[3] Defendant's response and motion are premised upon Plaintiff's having established a prima facie case under the liability scheme of the Carmack Amendment. An argument that Plaintiff caused the damage during securement (which is Defendant's burden to establish), however, could conceivably be recast as an argument that Plaintiff did not deliver the cooling tower to Defendant "in good condition" – the first element of Plaintiff's PFC (which is Plaintiff's burden to establish). As discussed below, however, summary judgment is precluded due to the genuine factual dispute over whether Plaintiff itself caused the damage to the shipment, although under the circumstances of this case establishing that the exception applies could likewise mean that Plaintiff has failed to establish the PFC element of delivery to the carrier in good condition.

the exceptions applies to relieve Defendant of liability. Specifically, there is a significant dispute over whether the damage to the shipment was caused by acts of Plaintiff-shipper itself. The parties both contend that the tower was undamaged immediately after being set on the flatbed trailer. (See Def.'s Resp. at 4; Pl.'s Mot. at 3.) While the parties generally agree that damage to the shipment was thereafter caused by the chains which were used to secure the tower to the bed of the trailer, they dispute who it was that secured the chains to the product by running chains through the tower's lifting eyes. (See Bill of Lading; Tower Tech Report; Crawford Report, Dkt. No. 29 Ex. 2; Richardson Dep. at 35.)

In support of its argument that the damage was caused by Defendant, Plaintiff offers deposition testimony and an affidavit from two employees. Although Bradley Richardson, one of Plaintiff's technicians, was present in Roxana overseeing the disassembly of the leased cooling towers, he admitted that he did not witness the shipment being secured to the flatbed trailer. (Richardson Dep. at 24.) According to Richardson, it is the truck driver's, i.e., Defendant's, responsibility to secure shipments for transport. (Id. at 35.) Richardson also testified, however, that he did not see who actually secured IT 13-04, and that the people who would be over in the lay-down yard would be "union employees or employees of [Plaintiff's lessee] and a truck driver for whatever trucking company would have been over there." (Id. at 40.) It is unclear who the employer for the "union employees" was, although Richardson believes that there were no other employees of Plaintiff present "at this time when [the shipment] is [sitting] on this flatbed trailer," and Plaintiff asserts that none

of its other employees was in Roxana, IL, at this time, although Defendant's assertion that over forty of Plaintiff's towers were being loaded into trucks at the Roxana facility at that time is undisputed. (See id. at 24; Def.'s Resp. at 1-2.) And an affidavit offered by Plaintiff from its asset manager, Tonya Duplantis, simply states: "According to our records, [Plaintiff]'s cooling tower was in good condition at the time it was tendered to [Defendant]." (See Duplantis Aff., Dkt. No. 24 Ex. 1.) Duplantis's affidavit does not indicate that she has any personal knowledge of the securement process the cooling tower went through in preparation for its August 7, 2006, trip from Illinois to Oklahoma or that she was present to view the proceedings.

In response, Defendant offers a claims report summarizing an inspection made in Chickasha, OK, on August 10, 2006, by Phyllis Johnson, a casualty adjuster for Crawford Claim Management Services.[4] (See Crawford Report.) After investigating the truck and trailer and interviewing Defendant's truck driver, the adjuster summarized the damage to IT 13-04 as follows:

---

[4] In response to Plaintiff's preemptive objection that the Crawford report is inadmissible hearsay (see Pl.'s Mot. at 3-4), Defendant submitted an affidavit from Crawford's branch manager, Mike Porter. This affidavit, together with the report itself, demonstrates that the Crawford report meets all requirements of being a "Record of Regularly Conducted Activity" under Fed. R. Evid. 803(6) and thus is not excluded under the hearsay rule. Rule 803(6) excludes from the hearsay rule any "memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

> The cooling tower is approximately . . . twenty feet high, fifteen feet wide and fifty feet long. . . . The tower is either strapped to the flatbed trailer or fastened with chains, as this one was. The chains are hooked to "eyes" at the upper corners of the tower. <u>The chains are secured in the eyes by the shipper.</u>[5] The driver criss-crosses the chains across the front of the tower and secures them to the trailer. This is done at the rear of the tower, also.
>
> The corners, where the eyes are located, have an extra small plate of the same material as the rest of the tower, secured to the wall of the tower. This plate has a "lip" that rolls over to the inside of the tower. When the chain is secured to the eye and is pulled securely, it rests on this lip.
>
> The damage to this tower occurred when the lip split from the chain resting on it, while in transit.

(See Crawford Report.)

Defendant has met its burden of showing that a genuine issue exists regarding whether the shipper itself secured the load for transit, i.e., placed the chains that caused the damage, which would potentially except Defendant from liability. This report, compiled by an adjuster who actually saw the shipment and spoke to the truck driver, indicates that Plaintiff, not Defendant, secured the chains in the eyes of the cooling tower. Although Plaintiff argues that the statement that "[t]he chains are secured in the eyes by the shipper" should be read generally, not as a report of what happened to IT 13-04 at the Roxana facility, such an interpretation does not logically follow from the statement's context within a specific investigation of an isolated incident involving IT 13-04. (See Crawford Report; Pl.'s Reply at 2-3.) Because the cooling tower was damaged by the securing chains, and

---

[5] It is unclear whether this sentence was underscored in the original report or if Defendant itself underscored this sentence to highlight it to the Court.

Defendant has set forth specific facts showing that a genuine issue remains for trial over who secured the cooling tower to the flatbed trailer, Plaintiff is not entitled to summary judgment.[6]

*B. Defendant's Motion*

Defendant argues that the damage to the shipment was caused by Plaintiff and so Defendant is excepted from liability and should be granted judgment. (See Def.'s Mot. at 4-5.) Summary judgment for Defendant would be inappropriate for the same reasons as those outlined above that precluded judgment to Plaintiff. The same genuine factual dispute that prevented the Court from concluding that Plaintiff itself did not damage the shipment prevents the Court from concluding that Plaintiff itself did damage the shipment. And as explained above, this dispute centers around a fact that might affect the outcome of this suit under the Carmack Amendment liability scheme. Thus, Defendant has not met its burden of showing an absence of material fact such that it is entitled to judgment on Plaintiff's Carmack Amendment claim.

---

[6] Defendant also presented evidence in support of additional, alternative argument that it is excepted from liability for the damage because the damage was caused by the inherent vice or nature of the product. (See Def.'s Mot. at 8-9.) This argument need not be further addressed for summary judgment purposes, however, because the factual dispute over whether the shipper caused the damage is sufficient to prevent the entry of summary judgment.

## IV. CONCLUSION

As outlined herein, Plaintiff's motion for summary judgment (Dkt. No. 24) is DENIED, and Defendant's motion for summary judgment (Dkt. No. 27) is DENIED. Proceedings in this case shall continue accordingly.

IT IS SO ORDERED this 23rd day of June, 2008.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge